UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TYRONE HOUSTON, A/K/A TYRONE BLACK,

              Plaintiff,

          -against-

ERIC ADAMS; CITY OF NEW YORK;
KATHY HOCHUL; ANDREW CUOMO;
ADRIENNE ADAMS; JANE/JOHN DOES
[ENTIRE VOTING CITY COUNSEL FOR NYS
LIBERTY ACT]; JOHN/JANE DOES [ENTIRE
VOTING 2/6/17 NYS ASSEMBLY BILL
3049B]; ANTHONY J. ANNUCCI; MILLER;
D.F. MARTUSCELLO; BRIAN BENJAMIN;
ANDREW LASSALLE; JOHN DOE,
DYCKMAN OB CENTER SUPERVISOR;
JANE/JOHN DOES, OTDA STATE
SUPPLEMENT PROGRAM; DARRYL L.
TOWNS; LETITIA JAMES,

              Defendants.

25-CV-6494 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under the court's federal question jurisdiction, alleging that Defendants violated his rights.[1] Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986; Fed. R. Civ. P. 65(a)(1), (b)(3); and 18 U.S.C. §§ 241, 242. He sues various New York City and New York State officials. By order dated October 3, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses the complaint, but grants Plaintiff 30 days' leave to replead certain claims in a second amended complaint.

---

[1] Plaintiff filed the original complaint in this action on August 4, 2025. On August 19, 2025, without direction from the Court, Plaintiff filed an amended complaint. The amended complaint (ECF 4) is the operative pleading.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

**BACKGROUND**

Plaintiff brings this action under the court's federal question jurisdiction. Named as Defendants are (1) New York City Mayor Eric Adams; (2) the City of New York; (3) New York State Governor Kathy Hochul; (4) former New York Governor Andrew Cuomo; (5) New York City Council Speaker Adrienne Adams; (6) John/Jane Does, whom Plaintiff identifies as the "entire voting City Council for [New York State ("NYS")] Liberty Act" (ECF 4, at 1); (7) John/Jane Does, whom Plaintiff identifies as the "entire voting 2/6/17 NYS Assembly Bill 3049B" (*id.*); (8) former New York State Department of Corrections and Community Supervision ("DOCCS") Commissioner Anthony J. Annucci; (9) Superintendent Miller of Edgecombe Transitional Housing; (10) current DOCCS Commissioner D.F. Martuscello; (11) Chairperson of Manhattan Community Board 10 Brain (or Brian) Benjamin; (12) District Manager of Manhattan Community Board 10 Andrew Lassalle; (13) John Doe "Dyckman Job Center's [Human Resources Administration ("HRA")] Supervisor for 1/6/23, at 8AM thru 4PM" (*id.* at 2); (14) John/Jane Does "NYS [Office of Temporary and Disability Assistance ("OTDA")] State Supplement Program for 4/7/03, 1/1/24 thru 1/1/25" (*id.*); (15) Chair of "NYS DOP" Darryl C. Towns[2] (*id.*); and (16) New York State Attorney General Letitia James.

The following facts are drawn from the amended complaint.[3] On January 5, 2023, Plaintiff was released from DOCCS custody and placed under parole supervision at Edgecombe Transitional Housing. On January 6, 2023, Plaintiff went to the Dyckman Job Center in Manhattan and applied for emergency cash assistance, Supplemental Nutrition Assistance Program ("SNAP") benefits, and Medicaid. A John Doe supervisor informed Plaintiff that

---

[2] Plaintiff does not indicate what the initials "DOP" stand for.

[3] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are in the amended complaint unless noted otherwise.

Governor Hochul and Mayor Adams had "instructed all NYC HRA to prioritize 'all illegal aliens and undocumented aliens parole into NYC'" by giving them $350 weekly, $1,000 in SNAP benefits, housing, and emergency Medicaid cards "under the [New York State] Liberty Act upon [f]iling HRA applications and everybody else must wait 90 to 120 days." (*Id.* at 11.)  Plaintiff maintains that unspecified Defendants have enacted a "Sanctuary City Resolution" that makes "illegal aliens, undocumented and non-visa-card holders criminal exempt from" federal immigration and law enforcement, while Plaintiff, who is an American-born Black male, is not exempt from "law enforcement ID checks." (*Id.*)

Plaintiff appears to state that he was granted $45.00 in bi-weekly checks, but that "illegal aliens received $350.00 weekly cash," and that he filed an appeal of that decision. (*See id.* at 11-12.) Plaintiff alleges,

> [b]ased upon personal knowledge, information and belief, and in light of defendant John Doe 1/6/23 Dyckman Job Center Supervisor for 8:30 AM thru 4PM/ 1/6/23, 2/6/23, 3/6/23 and 4/6/23, deprivations of emergency cash assistance based on American Citizenship, under NYS Liberty Act, on 4/7/23, [P]laintiff appealed defendants . . . decisions to office of temporary and disability assistance, on grounds of inadequacy/discrimination of Grant, including retroactive benefits, which defendants . . . effectively conceded discriminatory distribution of NYC HRA benefits between African American born and illegal aliens, where Plaintiff received $45.00 bi-weekly case benefits, while illegal aliens received $350.00 weekly cash.

(*Id.* at 11-12.)

> With respect to his public benefits, Plaintiff also alleges that on July 8, 2025,

> defendants Jane/John Doe (NYS OTDA), City of New York, E. Adams and Hochul, maliciously and in response to 1/17/25 appeals and discrimination complaint against all defendants to NYS Attorney General, reduced Plaintiff's SNAP benefits from $219.00 monthly to $37.00 monthly, in retaliation for 4/7/23, 1/1/24 thru 1/1/25 and 1/17/25 appeals and discrimination complaints, . . . where on 8/7/25, Housing Works Emergency Housing (ETH) was ordered by defendants City of New York and E. Adams to discharge Plaintiff, despite illegal aliens being housed here for over 4 years.

(*Id.* at 14.)

4

> Plaintiff further alleges that from January 1, 2024, through January 1, 2025, Defendants
>
> placed illegal migrants, illegal criminals and non-visas above African Black American man borned in America, by robbing and emblezzing Plaintiff out of $64.00 a month for 12 months out of his $78.00 SSP disability benefits in order to fund their illegal aliens and illegal criminals . . . while, Plaintiff is denied all NYC and NYS Human Resources to survival in two-days.

(*Id.* at 15.)

Plaintiff asserts that by "enacting the NYS Liberty Act," all Defendants "illegally import[ed] illegal immigrant labor" and "exempt[ed] them from Federal, State, or City immigration or criminal enforcement." (*Id.* at 17.) In enacting the Liberty Act, Defendants were motivated by "political motive to rewrite the Equal Protection of the laws for African Black American Man and award those Equal Protection of the law to only immigrants, as a retaliation for President Trumps' 3/6/17 Executive Order 13780, making Plaintiff a slave to defendants resources." (*Id.* at 8.)

In what appears to be a separate set of claims, Plaintiff alleges, that on April 5, 2023, July 14, 2023, and July 21, 2023, presumably while Plaintiff was incarcerated in an unspecified DOCCS facility, possibly Edgecombe, Defendants Miller, Annucci, and Hochul "deprived Plaintiff of sick call requests," requiring Plaintiff to go to the emergency room for "asth[ma], left shoulder pains, glaucoma and hypertension effects, due to no medications, causing (a) vision loss in both eyes, (b) higher rises in blood pressure, (c) heart damage and (d) lung damages." (*Id.* at 13.)

Plaintiff seeks money damages and an order enjoining Defendants from enforcing the NYS Liberty Act. (*Id.* at 20.)

**DISCUSSION**

**A.    Personal involvement**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the

defendants' direct and personal involvement in the alleged constitutional deprivation. *See*

*Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in

this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A

defendant may not be held liable under Section 1983 solely because that defendant employs or

supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable

under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional

violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir.

2020).

Beyond conclusory assertions, Plaintiff does not allege any facts showing how

Defendants Eric Adams, Hochul, Cuomo, Adrienne Adams, Benjamin, Lasalle, and Towns were

personally involved in the events underlying his claims. Plaintiff's claims against these

defendants are therefore dismissed for failure to state a claim on which relief may be granted.

*See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.    Legislative immunity**

Plaintiff's claims against the John and Jane Doe members of the New York State

Assembly and New York City Council appear to arise from those legislators' support of

legislation known as the New York State Liberty Act. These claims must be dismissed, however,

because state and local legislators are entitled to absolute immunity from liability under Section

1983 for official action undertaken in "the sphere of legitimate legislative activity." *Tenney v. Brandhove,* 341 U.S. 367, 376 (1951) (applying rule to state legislators); *Bogan v. Scott–Harris,* 523 U.S. 44, 49 (1998) (applying rule to local legislators); *see Olma v. Collins*, 499 F. App'x 98, 99 (2d Cir. Oct. 10, 2022) ("State, regional, and local legislators are entitled to absolute immunity from liability under 42 U.S.C. § 1983 for official action undertaken in 'the sphere of legitimate legislative activity.'" (citation omitted)). Because Plaintiff seeks to hold these defendants liable for the legislative activity of supporting or voting for a piece of legislation, the Court dismisses these claims under the doctrine of legislative immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

## C.    Equal protection claims

Plaintiff asserts that Defendants violated his rights under the Equal Protection Clause because "illegal aliens" and "undocumented aliens" are eligible for more generous public assistance benefits than those benefits for which Plaintiff was determined eligible. (ECF 4, at 11.) The Court understands Plaintiff's allegations as asserting that he was denied equal protection of the law based on national origin or alienage.

The Equal Protection Clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Therefore, "[t]o plead an equal protection claim, a plaintiff must show adverse treatment of individuals compared with other similarly situated individuals and that such selective treatment was based on impermissible considerations." *Goldstein v. Hochul*, 680 F. Supp. 3d 370, 399 (S.D.N.Y. 2023). "Similarly situated does not mean identical, but rather a reasonably close resemblance of the facts and circumstances of plaintiff's and comparators cases, to the extent that an objectively identifiable basis for comparability exists." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (quoting *Walker v. City of New York*, No. 05-CV-

7

1283, 2010 WL 5186779, at *7 (E.D.N.Y. Dec. 15, 2010)). Under the Equal Protection Clause, "classifications based on race, national origin, or alienage are subject to strict scrutiny and must be narrowly tailored to serve a compelling state interest." *Deide v. Day*, 676 F. Supp. 3d 196, 220 (S.D.N.Y. 2023) (citing *City of Cleburne*, 473 U.S. at 440).

Plaintiff alleges that the City of New York, in implementing a policy where migrant individuals arriving in the City receive better treatment than American citizen residents, creates a classification based on alienage. In order to state this claim, he must demonstrate that he and the migrant individuals receiving such benefits pursuant to the City of New York's policy are similarly situated. The key question is whether Plaintiff and these individuals are "comparable with respect to the legislative aim." *Catherine H. Barber Mem. Shelter v. N. Wilkesboro Bd. of Adjustment*, 576 F. Supp. 3d 318, 338 (W.D.N.C. 2021) (citing *Williams v. Vermont*, 472 U.S. 14, 23–24 (1985)). Plaintiff must also demonstrate that alienage is the basis for the alleged unequal treatment.

Here, Plaintiff does not allege sufficient facts to state an equal protection claim. The basis of Plaintiff's equal protection claims is that the New York State Liberty Act requires that undocumented individuals or migrants automatically receive greater benefits than he, as a citizen born in the United States, was provided. The Liberty Act is a package of legislation that has been introduced as various bills over the years; it has not been passed by both chambers of the state legislature or signed into law by the governor.[4] Simply put, the Liberty Act is not the law.

---

[4] *See* New York State Senate, Senate Bill S1066, https://www.nysenate.gov/legislation/bills/2025/S1066 (providing text to current version of the bill and showing legislative history since its initial introduction in 2017) (last viewed Jan. 6, 2026) [https://perma.cc/973P-UDMY]; State Senators Serrano and Hoylman Introduce Bills to Make New York a Sanctuary State (press release), https://www.nysenate.gov/sites/default/files/state_senators_serrano_and_hoylman_introduce_bill s_to_make_new_york_a_sanctuary_state.pdf (last viewed Jan. 6, 2025) (discussing 2025

Because the Liberty Act has not been enacted and is not law, Plaintiff cannot plausibly allege that he was denied equal protection based on provisions of the Liberty Act.

Plaintiff alleges that an unidentified supervisor at an HRA job center told him that Defendants Governor Hochul and Mayor Adams "instructed" HRA employees to "prioritize all illegal aliens and undocumented aliens paroled into NYC" by giving them certain benefits, while "everybody else must wait 90 to 120 days for approval." (ECF 4, at 11.) Even if the Court assumes that the HRA employee made this statement, Plaintiff does not allege sufficient non-conclusory facts suggesting that he was actually denied benefits because of his status as a United States citizen or that such benefits were granted to similarly situated non-United States citizens. For example, other than stating that he is on parole, Plaintiff provides no details regarding his individual social and financial circumstances that would bear on the level of benefits he is provided. He also does not identify the specific benefits programs for which he applied. Similarly, Plaintiff does not clearly state the amount of benefits for which he was determined eligible or the specific type of benefits that he received. Plaintiff also alleges that he appealed an initial determination of his rights, and, as a result, may have been granted additional benefits, but his allegations with respect to the appeal are unclear at best. Furthermore, aside from his assertions about the so-called requirements of the Liberty Act, Plaintiff alleges no specific facts suggesting that any similarly situated "undocumented aliens" or "illegal immigrants" applied for

---

introduction of the New York State Liberty Act) [https://perma.cc/DZL7-V5TG]; Assembly to Pass New York State Liberty Act & DREAM Act (press release), https://nyassembly.gov/Press/20170206/#:~:text=The%20New%20York%20State%20Liberty%2 0Act%20is,orientation%2C%20religion%2C%20or%20national%20or%20ethnic%20origin (Feb. 6, 2017) (discussing the New York State Aseembly's plan to pass the NYS Liberty Act in 2017) [https://perma.cc/F6MQ-TMBC]. The Court notes that nothing in the proposed legislation directs any New York State or New York City agency to provide immigrants, whether documented or undocumented, with greater public benefits than native-born New Yorkers.

the same programs that he did, were similarly situated with respect to financial and personal

circumstances, and were determined to be eligible for more favorable benefits than Plaintiff. *See*

*Calderon v. City of New York*, No. 24-CV-4631 (VEC) (KHP), 2025 WL 2336439, at *6

(S.D.N.Y. June 6, 2025) (finding that plaintiff failed to state an equal protection claim where the

complaint "contain[ed] only generalities about the living situations of 'migrants' versus U.S.

citizens" and "there [we]re not details provided about the specific City policies for unhoused

New Yorkers [plaintiff] [wa]s possibly complaining about"), *report and recommendation*

*adopted*, 2025 WL 1874671 (S.D.N.Y. July 8, 2025).

For these reasons, the Court dismisses Plaintiff's equal protection claims for failure to

state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his equal protection claims in a second

amended complaint that alleges facts that cure the deficiencies identified above.

**D.    Procedural due process claims**

Plaintiff's allegations, construed liberally, suggest that he may be attempting to assert

claims under Section 1983 that an agency of the City of New York denied him public benefits

without due process in violation of the Fourteenth Amendment. The Fourteenth Amendment

provides that no state shall "deprive any person of life, liberty, or property, without due process

of law." U.S. Const. Amend XIV, § 1. Where a plaintiff sues a defendant "to enforce procedural

due process rights, a court must determine (1) whether a [liberty or] property interest is

implicated, and if it is, (2) what process is due before the plaintiff may be deprived of that

interest." *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citation omitted). "The fundamental

requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a

meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and

citations omitted). Generally, due process requires a hearing before a final deprivation of an

individual's liberty or property interest. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Public assistance benefits "have long been afforded constitutional protection as a species of property protected by the federal Due Process Clause." *Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005) (citing *Goldberg*, 397 U.S. at 262 & n.8).

When determining whether a person has been deprived of procedural due process, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts. If so, there will be no claim before the federal court, whether or not plaintiff took advantage of the state procedure." *Vialez v. New York City Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). In addition, "if a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Id.* at 113.

New York law provides for access to an administrative fair hearing to challenge adverse determinations with respect to public assistance benefits. *See* N.Y. Soc. Serv. Law § 22; 18 N.Y.C.R.R. Ch. II, Subch. B, Art. 1, pt. 358. Further judicial review is available in the state courts in a proceeding under Article 78 of the N.Y.C.P.L.R. to challenge adverse determinations in connection with government entitlement programs, such as food assistance, medical assistance, or cash assistance. Courts have held that these procedures satisfy procedural due process. *See Rodriguez v. N.Y. State Dep't of Parole*, No. 19-CV-0643 (VEC) (JLC), 2019 WL 6973568, at *14 (S.D.N.Y. Dec. 20, 2019), *report & recommendation*, 2020 WL 257420 (S.D.N.Y. Jan. 17, 2020); *Banks v. HRA*, No. 11-CV-2380, 2013 WL 142374, at *3 (E.D.N.Y. Jan. 11, 2013); *Vapne v. Eggleston*, No. 04-CV-0565 (NRB), 2004 WL 2754673, at *5 (S.D.N.Y. Dec. 1, 2004).

Here, Plaintiff alleges that he was able to appeal his initial determination of benefits, presumably through an administrative fair hearing. (*See* ECF 4, at 11, 14). Plaintiff does not allege whether he sought further review in an Article 78 proceeding. Nor does he allege any facts suggesting that the process provided for under state law was unavailable to him. The Court therefore dismisses Plaintiff's procedural due process claims under Section 1983 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court grants Plaintiff leave to replead his procedural due process claims in a second amended complaint that alleges facts addressing the deficiencies identified above.

### E.    Claims for inadequate medical care

Plaintiff alleges that on April 5, 2023, July 14, 2023, and July 21, 2023, presumably while Plaintiff was incarcerated in an unspecified DOCCS facility, possibly Edgecombe, Defendants Miller, Annucci, and Hochul "deprived Plaintiff of sick call requests," requiring him to go to the emergency room. (ECF 4, at 13.)

Rules 18 and 20 of the Federal Rules of Civil Procedure govern the joinder of claims and parties, respectively. Rule 18 permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009).

Rule 20(a)(2) permits a plaintiff to join multiple defendants in one action if: (1) a right to relief is asserted against all of the defendants, or the claims arise out of the same transaction, occurrence, or series of transactions, and (2) questions of law or fact are common to all defendants. *See id.* Although courts have interpreted Rule 20(a) liberally to allow related claims to be tried within a single proceeding, *Barr Rubber Products Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 (2d Cir. 1970), "the mere allegation that Plaintiff was injured by all Defendants is

not sufficient to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)," *Deskovic*, 673 F. Supp. 2d at 167.

Misjoinder of parties is not a ground for dismissing an action, but a court has discretion at any time, *sua sponte* or on motion, to add or drop a party. Fed. R. Civ. P. 21. "[I]f a court concludes that defendants have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever parties or claims from the action." *Deskovic*, 673 F. Supp. 2d at 159-60 (citing Fed. R. Civ. P. 21). In determining whether to sever a claim, courts consider "the two requirements of Rule 20 and additional factors, including (1) whether severance will serve judicial economy; (2) whether prejudice to the parties would be caused by severance; and (3) whether the claims involve different witnesses and evidence." *Kehr v. Yamaha Motor Corp.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (relying on *Laureano v. Goord*, No. 06-CV-7845 (SHS) (RLE), 2007 WL 2826649, at *8 (S.D.N.Y. Aug. 31, 2007)). Put simply, courts "look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" *Kalie v. Bank of Am. Corp.*, No. 12-CV-9192 (PAE), 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).

Here, the main claims in Plaintiff's amended complaint appear to be his claims against the City of New York and its employees arising from his receipt of public benefits. Plaintiff's claims against Defendants Miller, Annucci, and Hochul arising from his being provided with inadequate medical care while incarcerated in a DOCCS facility involve different legal claims, different witnesses, and different evidence than his claims related to public benefits. Accordingly, the Court severs Plaintiff's claims for inadequate medical care against Defendants

13

Miller, Annucci, and Hochul, and dismisses these claims and parties without prejudice to his bringing these claims in a separate action.[5]

## F. Claims under criminal law

Plaintiff attempts to assert claims under 18 U.S.C. §§ 241, 242 (*see* ECF 4, at 1), which are provisions of the United States Criminal Code. Plaintiff, however, cannot initiate the arrest and prosecution of an individual in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 87 (1981). Nor can Plaintiff or the Court direct prosecuting attorneys to initiate a criminal proceeding against Defendant, because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, the Court dismisses these claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C § 1915(e)(2)(B)(ii).

## G. Claims under Section 1981

To the extent Plaintiff seeks to bring claims under 42 U.S.C. § 1981 that are separate from his claims under Section 1983, the Court dismisses those claims. This is because "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *see Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (holding "that § 1981 does not provide a separate private right of action against state

---

[5] In New York, claims under Section 1983 generally must be filed within three years of the claim's accrual. *See Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002). Section 1983 claims generally accrue when a plaintiff knows or has reason to know of the injury that is the basis of the claim. *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013).

actors"). The Court therefore dismisses any claims Plaintiff seeks to assert under Section 1981 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**H.      Conspiracy claims under 42 U.S.C. §§ 1985, 1986**

Plaintiff attempts to asserts claims that Defendants engaged in a conspiracy to violate his federal civil rights in violation of 42 U.S.C. §§ 1985(3) and 1986. To state a claim under Section 1985(3), a plaintiff must show the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of his right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [§ 1985(3)] conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (*per curiam*)).

Vague and unsupported assertions of a claim of conspiracy will not suffice. *See, e.g.*, *Wang v. Miller,* 356 F. App'x 516, 517 (2d Cir. 2009) (summary order). To maintain an action under Section 1985, "a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted).

Plaintiff fails to state a claim for conspiracy under Section 1985. Plaintiff alleges no specific, nonconclusory facts suggesting that any of the defendants entered into an agreement to deprive Plaintiff of his civil rights or took any overt act directed towards those ends. The Court therefore dismisses Plaintiff's claims under Section 1985 for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1986 provides a cause of action against anyone who, "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian,* 7 F.3d at 1088 (2d Cir. 1993) (quoting *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y. 1989), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir.1989)). Thus, a Section 1986 claim must be predicated upon a valid Section 1985 claim. *Id.* (citing *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir. 1978), *cert. denied*, 436 U.S. 906 (1978)).

As discussed above, Plaintiff has failed to state a valid conspiracy claim under Section 1985, which is a mandatory predicate for a claim under Section 1986. The Court grants Plaintiff leave to replead his claims under Sections 1985 and 1986 in a second amended complaint.

## I.    Claims under state law

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**LEAVE TO AMEND GRANTED**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid equal protection claim and, possibly, a procedural due process claim, the Court grants Plaintiff 30 days' leave to amend his complaint to cure the deficiencies identified above. Leave to replead is granted solely to claims arising under the Due Process and Equal Protection Clauses and, if Plaintiff can allege sufficient, non-conclusory facts, claims for conspiracy. If Plaintiff attempts to assert additional federal claims in his second amended complaint, the Court will summarily dismiss those claims.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter judgment in this action.

**CONCLUSION**

The Court dismisses the complaint for the reasons stated above. *See* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). The Court dismisses Plaintiff's Section 1983 claims for inadequate medical care without prejudice to Plaintiff bring them in a separate action.

The Court grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as set forth above.

17

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:   February 3, 2026
         New York, New York

                                    /s/ Laura Taylor Swain
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge