UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/17/2026

TYRONE HOUSTON, a/k/a TYRONE BLACK,

                                    Plaintiff,

-against-

ERIC ADAMS, et al.,

                                    Defendants.

25-CV-06494 (MMG)

**MEMORANDUM
OPINION AND ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis* ("IFP"), brings this action under 42 U.S.C. § 1983, alleging that various New York City and New York State agencies and officials violated his federal constitutional rights by denying him certain public benefits, including medical aid, food assistance, and housing. *See* Dkt. No. 20. Named as Defendants are: (1) former New York City Mayor Eric Adams ("Adams"); (2) the City of New York; (3) New York City Human Resources Administration ("HRA") Commissioner Molly Wasow Park ("Park"); (4) HRA Administrator Scott French ("French"); (5) New York Governor Kathy Hochul ("Hochul"); (6) New York State Office of Temporary and Disability Assistance ("OTDA") Commissioner Barbara C. Guinn ("Guinn"); (7) OTDA Associate Deputy Commissioner Samuel L. Spitzberg ("Spitzberg"); (8) OTDA Executive Deputy Commissioner Rajni Chawla ("Chawla"); (9) New York City Homeless Services Administrator Joslyn Carter ("Carter"), (10) a John Doe supervisor at Dyckman Job Center who worked on January 6, 2023, from 8:30AM to 4:00PM (the "HRA John Doe"); (11) the John/Jane Doe "OTDA Supervisors responsible for Plaintiff's state disability payments from 1/1/24 thru 1/1/25" (the "OTDA John Does") (12) New York State of Health; and (13) Health First Health Care. *See* Dkt. No. 20 at 1–2, 5–7. In addition to monetary relief, Plaintiff seeks a temporary restraining order and

1

preliminary injunction ordering the Defendants to restore his benefits and to provide him necessary medical care. *See* Dkt. Nos. 12, 22, 24.

For the reasons that follow, Plaintiff's motions for emergency relief are DENIED, and his claims against Guinn, Park, French, Carter, Spitzberg, Chawla, the OTDA John Does, New York State of Health, and Health First Health Care are DISMISSED. The Court directs service on Adams, Hochul, and the City of New York; and directs the City of New York to assist Plaintiff in identifying the HRA John Doe.

## BACKGROUND

### I.    RELEVANT FACTS[1]

Plaintiff is a "New York state parolee" on lifetime supervised release who suffers from glaucoma, COPD, asthma, hypertension, and arthritis. Dkt. No. 20 at 5. On January 5, 2023, he was released from the custody of the New York Department of Corrections and Community Supervision ("DOCCS") and placed under parole supervision at the Edgecombe Residential Treatment Facility ("Edgecombe"), a transitional housing program for parolees in Manhattan. Dkt. No. 16 at 2; Dkt. No. 20 at 5.

The day after his release, Plaintiff went to the Dyckman Job Center, an HRA site in Manhattan, and applied for: (1) "emergency medical treatment based on Plaintiff's glaucoma, COPD, asthma, hypertension and chronic arthritis pains;" (2) "emergency housing assistance to address Plaintiff's status in transitional housing and risk of displacement;" and (3) cash

---

[1] These facts derive from Plaintiff's amended complaints, Dkt. Nos. 4 ("First Amended Complaint") & 20 ("Second Amended Complaint"), as well as the various submissions in support of Plaintiff's motions for emergency relief, Dkt. Nos. 13, 16–18, 22–27.

Plaintiff's submissions contain typographical errors and use nonstandard grammar, spelling, punctuation, and capitalization. In quoting the submissions, the Court will conform the capitalization to accepted standards but will otherwise reproduce Plaintiff's statements as written.

assistance for essential survival needs." Dkt. No. 20 at 8. He alleges that the HRA John Doe informed him that the "Governor of New York and Mayor of New York City has issued directives instructing HRA staff to prioritize non-citizens and illegal aliens over American citizens when processing applications for emergency services." *Id.* at 9. Moreover, the HRA John Doe allegedly stated that the HRA was providing "the exact same services (emergency medical, housing and cash) to illegal healthy individuals and non-citizens who had applied after Plaintiff." *Id.*

Plaintiff alleges that he was denied emergency medical treatment and housing, *id.* at 11, and appears to allege that he began receiving cash assistance in the form of Supplemental Nutrition Assistance Program ("SNAP") and New York State Supplement Program ("SSP") benefits, but that those benefits were later unlawfully reduced. *Id.* at 10, 13, 15. Specifically, between January 2024 and January 2025, "Defendants Guinn, Park, French, NYS of Health and Health First" allegedly "stole $64.00 out of $78.00 out of Plaintiff's state supplemental program (a loss over 90%)." *Id.* at 13. Relatedly, he alleges that on April 17, 2023, March 20, 2024, and October 17, 2025, he appeared "before fair hearings officers, representing defendants Guinn, Park, Jane/John Doe (OTDA Supervisor for 1/1/24 thru 1/1/25), Carter and French, and was denied housing, reasonable SNAP to confirm with medical and beliefs to eat low-sodium and non-preservations food." *Id.* at 9.

Plaintiff attributes the denial and reduction of his benefits to unlawful discrimination by Defendants. Based on the HRA John Doe's comments regarding a purported government bias favoring unlawful immigrants, Plaintiff alleges that "Eric Adams, Kathy Hochul and the City of New York entered into a meeting of the minds to enact policies that prioritize non-citizen over American citizen for the distribution of finite HRA emergency funds." *Id.* at 12. He asserts that

"this prioritization was carried out under the umbrella of the 'open broader policy under Biden/Harris administration' and other municipal policies which Plaintiff alleges are being used to rob and embezzle funds, specifically by reducing Plaintiff's SSP disability and SNAP benefits to fund services for non-citizens." *Id.* at 10.  He alleges that the $64 "stolen" from his cash benefits was used to pay for "awarding illegal aliens $350.00 per week debt cash card, $1,000 SNAP monthly, emergency housing and Medicaid cards." *Id.* at 13.  Further, he alleges that Defendants Guinn, Park, French, NYS of Health, and Health First "were the 'operational arms' of the conspiracy" who "received these top-down instructions and knowingly executed the reduction in benefits." *Id.* at 13–14.  He maintains that "[t]his conspiracy was motivated by a class based, discriminatory animus, as evidenced by HRA's public admission that resources are being diverted from America-born disabled citizens to non-citizens." *Id.* at 15.

Besides the alleged discrimination, Plaintiff also alleges a lack of due process in connection with his loss of benefits.  *Id.* at 14.  He states he "was given <u>no</u> notice or aid to continue about 11/2024 reclassification of SNAP and Medicaid" and that Defendants "knowingly executed the reduction in benefits without due process (notice of hearing on housing denial)." *Id.*

Separately, Plaintiff alleges that "Defendant Eric Adams and the City of New York have maintained a policy of unlawful retention exceeding three (3) years, despite Plaintiff's 1/5/23 release from prison." Dkt. No. 16 at 3.  This allegation is apparently in reference to Plaintiff's residence in transitional housing at Edgecombe since being paroled.  During that time, Plaintiff allegedly suffered the "denial of glaucoma eye drops for 3+ years, denial of asthma, COPD, hypertension, arthritis medications and care," which resulted from a "systemic failure of NYS DOCCS and NYC to track and have HRA/OTDA supervisors submit the proper housing

4

paperwork for medically dependent parolee." *Id.* at 1, 3.  Specifically, he alleges that on February 2, 2026, a "CVS pharmacy notified Plaintiff his provider will not renew glaucoma eye drops." *Id.* at 2.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on August 4, 2025, Dkt. No. 1, which he then amended on August 19, 2025, Dkt. No. 4.  The First Amended Complaint asserted claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 18 U.S.C. §§ 241, 242 against dozens of defendants, including Adams; Hochul; the HRA John Doe; the City of New York; former New York Governor Andrew Cuomo; New York Attorney General Letitia James; former New York City Council Speaker Adrienne Adams; DOCCS Commissioner D.F. Martuscello; former DOCCS Commissioner Anthony J. Annucci; Chairperson of Manhattan Community Board 10 Brian Benjamin; District Manager of Manhattan Community Board 10 Andrew Lasalle, Edgecombe Superintendent Seiveright Miller; Chair of "NYS DOP" Darryl C. Towns, and various unnamed government officials and employees, including legislators who voted for certain measures that underlie Plaintiff's discrimination complaints.  *See id.* at 1–2.

On February 3, 2026, then-presiding Chief Judge Swain dismissed the First Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  *See* Dkt. No. 11 ("Dismissal Order").  The Dismissal Order dismissed: (1) any claims against Adams, Hochul, Cuomo, Adrienne Adams, Benjamin, Lasalle, and Towns, including all claims under Section 1983, because the First Amended Complaint did not allege facts to show that those defendants were personally involved in the underlying claims, s*ee id.* at 6; (2) any claims against members of the New York State Assembly and New York City Council because those defendants are protected by legislative immunity, *see id.* at 6–7; (3) any equal protection claims because

5

Plaintiff did "not allege sufficient non-conclusory facts suggesting that he was actually denied benefits because of his status as a United States citizen or that such benefits were granted to similarly situated non-United States citizens," *id.* at 7–10; (4) any procedural due process claims because Plaintiff alleged "that he was able to appeal his initial determination of benefits" and did "not allege any facts suggesting that the process provided for under state law was unavailable to him;" *id.* at 10–12; (5) any claims for inadequate medical care that arose during Plaintiff's incarceration[2] because they were improperly joined, *see id.* at 12–14; (6) any claims under 18 U.S.C. §§ 241 and 242 because Plaintiff lacks standing to enforce federal criminal law, *see id.* at 14; (7) any claims under Section 1981 because Section 1983 provides the exclusive federal remedy for violation of Section 1981, *see id.*; (8) any conspiracy claims under Sections 1985 and 1986 because Plaintiff failed to allege any "specific, nonconclusory facts suggesting that any of the defendants entered into an agreement to deprive Plaintiff of his civil rights or took any overt act directed towards those ends, *see id.* at 15; and (9) any claims under state law because the Court declined to exercise supplemental jurisdiction, *see id.* at 16.

Chief Judge Swain granted Plaintiff leave to file a Second Amended Complaint "solely" to cure the deficiencies with respect to "claims arising under the Due Process and Equal Protection Clauses, and, if Plaintiff can allege sufficient, non-conclusory facts, claims for conspiracy. *See id.* at 17.

On February 9, 2026, Plaintiff file an emergency application for a temporary restraining order and preliminary injunction, stating that the deprivations of government benefits and his

---

[2] The allegations of inadequate medical care in the First Amended Complaint concerned events that occurred in 2023, when Plaintiff was incarcerated, *see id.* at 13, as opposed to the similar claims in the Second Amended Complaint concerning his time at Edgecombe, *see* Dkt. No. 16 at 3; Dkt. No. 20 at 1–3.

ongoing unlawful "retention" in Edgecombe pose immediate dangers to Plaintiff's health. *See* Dkt. No. 13 ("February 9 Emergency Motion"). Plaintiff then filed a Second Amended Complaint on February 18, 2026, repeating the allegations from his earlier pleadings with a new focus on the health risks alleged in the February 9 Emergency Motion. *See* Dkt. No. 20 at 2–4. Also on February 18, 2026, Plaintiff filed an emergency application for a temporary restraining order detailing how "the current 3+ year retention and denial of care by HRA and OTDA is not a bureaucrat error, but the lastest [*sic*] 'shadow sentence' trigger by Plaintiff's successful exposure of corruption within the NYC Transit Authority and NYS DOCCS." Dkt. No. 23 ("February 18 Emergency Motion") at 1.

The Second Amended Complaint retains Adams, Hochul, and the HRA John Doe as defendants, and adds Guinn, Park, Spitzberg, French, Carter, Chawla, the OTDA John Does, New York State of Health, and Health First Health Care. *See* Dkt. No. 20 at 5–7. Plaintiff asserts claims for: (1) Equal Protection violations based on the defendants' "policy and practice of preferential treatment based on citizenship and immigration status, specifically favoring non-citizens over American citizens in the allocation of emergency HRA resources;" (2) "Intentional Conspiracy to Violate Plaintiff's Civil Rights" based on the above-mentioned policies and the "overt act" of the Dyckman Job Supervisor's denial of Plaintiff's application; (3) "Conspiracy to Deprive Plaintiff of Civil Rights By Stealing His State Supplement Program Fund" based on an alleged conspiracy among OTDA and HRA officials to reduce his SSP benefits "without providing the Constitutionally required Notice of Decision or opportunity for a Fair Hearing;" (4) "Monell Direct Liability Against the City of New York" based on a policy of "denying procedural hearings to individuals in HRA/OTDA programs;" (5) "Deliberate Indifferences to

7

Medical and Dietary Neglect, Under Unlawful Retention" based on the alleged deprivations of

SSP benefits and the lack of medical care at Edgecombe.  *Id.* at 10–23.

**DISCUSSION**

I.       **LEGAL STANDARD**

      **A.  As to the Second Amended Complaint**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is

frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also*

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised.  *See*

Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret

them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470

F.3d 471, 474 (2d Cir. 2006).[3]  But *pro se* pleadings still must comply with Rule 8 of the Federal

Rules of Civil Procedure, which requires a complaint to make a short and plain statement

showing entitlement to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is

plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that

the defendant is liable for the alleged misconduct.  In reviewing the complaint, the Court must

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations. [insert after first case citation]

accept all well-pleaded factual allegations as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  But the Court need not accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions.  *Twombly*, 550 U.S. at 555.  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

### B.  As to the Motions for Emergency Relief

To obtain a temporary restraining order or preliminary injunction, a party must demonstrate "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor." *MyWebGrocer, L.L.C. v. Hometown Info., Inc.*, 375 F.3d 190, 192 (2d Cir. 2004).  "Such relief, however, 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'"  *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## II.    THE SECOND AMENDED COMPLAINT

Notwithstanding the liberal construction afforded to *pro se* pleadings, the Court construes the Second Amended Complaint to assert only the claims for which the Dismissal Order previously granted Plaintiff leave to amend.  Those claims are "claims arising under the Due Process and Equal Protection Clauses, and . . . claims for conspiracy."  Dismissal Order at 17.

9

### A. The Due Process Claims Are Dismissed

The Court previously dismissed the due process claims in the First Amended Complaint because Plaintiff alleged "that he was able to appeal his initial determination of benefits" and did "not allege any facts suggesting that the process provided for under state law was unavailable to him" or "allege whether he sought further review in an Article 78 proceeding." *Id.* at 10–12. The Second Amended Complaint does not allege any facts to cure the deficiencies identified in the Dismissal Order. Instead, it merely asserts a legal conclusion that "Article 78 is inapplicable to continuing violation doctrine." Dkt. No. 20 at 19.

The continuing violation doctrine has nothing to do with whether Plaintiff could have sought relief in an Article 78 proceeding. Rather, the doctrine is an exception to Title VII's statute of limitations, allowing a plaintiff to "bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019). If Plaintiff means to argue that an Article 78 proceeding was unavailable to him because the statute of limitations had expired, the argument is unavailing. *See Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011) ("An Article 78 proceeding provides the requisite post-deprivation process—even if [Plaintiff] failed to pursue it."); *Benjamin v. Town of Islip*, No. 20-CV-00056 (ENV) (LB), 2021 WL 8344132, at *10 (E.D.N.Y. Aug. 12, 2021), *report and recommendation adopted*, 2022 WL 1090608 (E.D.N.Y. Apr. 12, 2022) ("Even if an Article 78 proceeding would be untimely and therefore no longer available, the fact that it was previously available satisfies the requirements of due process."). Accordingly, the due process claims are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. The Claims Against Guinn, Park, Spitzberg, French, Carter, Chawla, and the OTDA John Does Are Dismissed**

The Court also previously dismissed most of the individual defendants named in the First Amended Complaint because Plaintiff had not adequately alleged their personal involvement in any constitutional violations. *See* Dismissal Order at 6. The same defect requires dismissal of the individual defendants newly added to the Second Amended Complaint, namely Guinn, Park, Spitzberg, French, Carter, Chawla, and the OTDA John Does.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." "To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Based only on the denial or reduction of his public benefits, and the statement of the HRA John Doe that the "Governor of New York and Mayor of New York City has issued directives instructing HRA staff to prioritize non-citizens and illegal aliens over American citizens when processing applications for emergency services," Plaintiff accuses numerous public servants of violating his constitutional rights. Plaintiff's allegations do not support his claims. As to Spitzberg or Chawla, Plaintiff fails completely to offer non-conclusory allegations about their personal involvement. As to Carter and French, he merely alleges that they were present for hearings regarding his benefits. *See* Dkt. No. 20 at 9–10. As to Guinn and Park, he asserts they "stole" his benefits "with malice and discriminatory intent" and "issued directives to prioritize non-citizens." *Id.* at 13, 16. And as to the OTDA John Does, he asserts they

11

"knowingly implanted these directives [from Guinn and Park] by manually reducing Plaintiff's monthly SSP from $78.00 to $14.00." *Id.* at 16.

Plaintiff's assertions merely proffer his assumptions about the unlawful conduct these individuals must have engaged in, unsupported by any allegations connecting the individuals to the facts of this case. The accusations are pure speculation and need not be accepted as true. *See Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, 524 F. Supp. 3d 242, 249 (S.D.N.Y. 2021) ("[S]peculative allegations without factual support cannot serve as a basis for a claim."). And even if the Court accepts them as true, the assertions fail to state a claim because Plaintiff makes no non-conclusory allegations that the individuals undertook the alleged actions with the requisite discriminatory intent. *See Bergnes v. Zayas*, No. 24-2434, 2025 WL 1498177, at *1 (2d Cir. May 23, 2025) ("To state a discrimination claim under the Fourteenth Amendment Equal Protection Clause, plaintiffs must sufficiently allege that defendants acted with discriminatory intent.") (quoting *Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015)). The Court therefore dismisses the claims against Guinn, Park, Spitzberg, French, Carter, Chawla, and the OTDA John Does for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### C.  The Claims Against New York State of Health Are Dismissed

The Court must also dismiss Plaintiff's claims against New York State of Health. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* This immunity shields States and their agencies from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72–74 (1985); *Pennhurst*

12

*State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984).  Defendant New York State of Health is a part of the New York State Department of Health, which is a state agency that enjoys Eleventh Amendment immunity.  *See, e.g., Gage v. New York State Dep't of Health*, 204 F. Supp. 2d 399, 402 (N.D.N.Y. 2002) (holding that Section 1983 claims against New York State Department of Health are barred by the Eleventh Amendment).

New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting Section 1983.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).  Plaintiff's Section 1983 claims against New York State of Health are therefore barred by the Eleventh Amendment and are dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### D.  The Claims Against Health First Health Care Are Dismissed

A claim for relief under Section 1983 must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage."  42 U.S.C. § 1983.  Private parties therefore generally are not liable under the statute.  *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Here, Plaintiff brings claims against Health First, which is a private entity that Plaintiff appears to allege plays a role in administering health benefits in coordination with New York State of Health.  *See* Dkt. No. 20 at 8.  The activity of a private entity may be considered to be state action for the purpose of Section 1983 liability in the following three situations: (1) when the entity acts using the coercive power of the State or is controlled by the State (the "compulsion test"); (2) when the State provides significant encouragement to the entity, the entity willfully participates in joint activity with the State, or the entity's functions are entwined

13

with State policies (the "joint action" or "close nexus" test); or (3) when the State has delegated a public function to the entity (the "public function" test). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).

The fundamental question under each test is whether the private entity's challenged actions are "fairly attributable" to the State. *Id.* (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). In analyzing whether a private entity has acted as a state actor for the purpose of Section 1983 liability, a court must first "identify[] the specific conduct of which the plaintiff complains, rather than consider the general characteristics of the entity." *Id.* The fact that an entity receives public funds does not turn private action into state action, and acts of private contractors do not become acts of the government because of the contractor's engagement in government contracts. *See Rendell-Baker*, 457 U.S. at 840–41. Furthermore, a private entity does not become a state actor merely by acting in accordance with state regulations. *See id.* at 841. Thus, "a private insurer's decision to withhold payment for disputed medical treatment" is not an action fairly attributable to the State such as to make the private insurer a state actor for the purpose of Section 1983 liability. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999); *see id.* at 52 ("Action taken by private entities with the mere approval or acquiescence of the State is not state action."). Accordingly, while "[p]rivate companies frequently administer health benefits and insurance plans[,] . . . [p]roviding health insurance (even if funded by the government) does not transform [a private health-insurance provider] into a state actor." *Clissuras v. Teachers' Ret. Sys. of N.Y.*, Nos. 02-CV-08130, 02-CV-08138, 2003 WL 1701992, at *3 (S.D.N.Y. Mar. 28, 2003).

Here, Plaintiff alleges no facts suggesting that Health First should be considered a state actor under Section 1983. Furthermore, even if Health First could be considered a state actor,

14

Plaintiff alleges no facts describing what Health First did or how it was directly involved in violating his rights.  The Court therefore dismisses Plaintiff's claims against Health First for failure to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### E.  Service is Ordered on the Remaining Defendants

Because Plaintiff has been granted permission to proceed IFP, he is entitled to rely on the Court and the U.S. Marshals Service to effect service on the defendants that have not been dismissed.  *Walker v. Schult*, 717 F.3d. 119, 123 n.6 (2d Cir. 2013); *see also* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process . . . in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) (the court must order the Marshals Service to serve if the plaintiff is authorized to proceed IFP).

To allow Plaintiff to effect service on Defendants Adams, Hochul, and the City of New York through the U.S. Marshals Service, the Clerk of Court is instructed to fill out a U.S. Marshals Service Process Receipt and Return form ("USM-285 form") for each of these defendants.  The Clerk of Court is further instructed to issue summonses and deliver to the Marshals Service all the paperwork necessary for the Marshals Service to effect service upon these defendants.

If the complaint is not served within 90 days after the date summonses are issued, Plaintiff should request an extension of time for service.  *See Meilleur v. Strong*, 682 F.3d 56, 63 (2d Cir. 2012) (holding that it is the plaintiff's responsibility to request an extension of time for service).

Plaintiff must notify the Court in writing if his address changes, and the Court may dismiss the action if Plaintiff fails to do so.

15

**F.  *Valentin* Order**

Under *Valentin v. Dinkins*, a *pro se* litigant is entitled to assistance from the district court in identifying a defendant.  121 F.3d 72, 76 (2d Cir. 1997).  In the Second Amended Complaint, Plaintiff supplies sufficient information to permit the City of New York to identify the HRA John Doe, who worked as a supervisor at the Dyckman Job Center on January 6, 2023, from 8:30 AM until 4:00 PM.  It is therefore ordered that the New York City Law Department, which is the attorney for and agent of the City of New York, must ascertain the identity of the John Doe whom Plaintiff seeks to sue here and the address where the defendant may be served.  The Law Department must provide this information to Plaintiff and the Court within sixty days of the date of this order.

Within thirty days of receiving this information, Plaintiff must file a Third Amended Complaint naming the newly identified HRA John Doe defendant.  <u>No other amendments are permitted—the Court declines to grant Plaintiff leave to amend his complaint beyond identifying the HRA John Doe defendant</u>.  *See Ruscelli v. Dep't of Educ. of City of New York*, No. 23-CV-07475 (AMD) (MMH), 2026 WL 381642, at *9 (E.D.N.Y. Jan. 7, 2026) ("Leave to amend may be denied when a plaintiff has already been given an opportunity to amend.").  The Third Amended Complaint will replace, not supplement, the Second Amended Complaint.  An amended complaint form that Plaintiff should complete is attached to this order.  Once Plaintiff has filed the Third Amended Complaint, the Court will screen it and, if necessary, issue an order directing the Clerk of Court to complete the USM-285 forms with the addresses for the named John Doe defendant and deliver all documents necessary to effect service to the U.S. Marshals Service.

16

## III.    THE MOTIONS FOR EMERGENCY RELIEF

Plaintiff seeks emergency relief enjoining Defendants from "continuing the unlawful 3+ year retention of Plaintiff within HRA/OTDA approved and city funded transitional housing;" "enforcing the reduction of SNAP benefits" to "ensure access to [Plaintiff's] medically required low-sodium diet;" depriving Plaintiff of "life-sustaining" medical care; altering the conditions of his housing in a manner that would "exacerbate his documented asthma, COPD, glaucoma, hypertension, arthritis, or physical disabilities;" and "engaging in any retaliatory administrative actions against Plaintiff."  Dkt. No. 13.

Plaintiff has not met the required showing as to his unlawful "retention" in transitional housing because he cannot show that such retention is unlawful.  He alleges that he has been "retained for over 1,095 days beyond his legal release date."  Dkt. No. 16 at 2.  Plaintiff appears to misunderstand the conditions of his supervised release.  He admits that he is subject to lifetime supervised release and that after he was released from incarceration, he was placed under parole supervision at Edgecombe.  *See* Dkt. No. 4 at 4; Dkt. No. 16 at 2, Dkt. No. 20 at 5.  His continued residence at Edgecombe accordingly raises no suggestion of unlawfulness, and he has not demonstrated a likelihood of success on the merits or sufficiently serious questions going to the merits with respect to any claim challenging his ongoing parole or supervised release (and in any case, he has not properly brought such a claim before this Court).

Nor can Plaintiff demonstrate likelihood of success as to any claim related to the provision of necessary healthcare.  Plaintiff alleges that Defendants are unlawfully denying him medical treatment while he resides in transitional housing.  Dkt. No. 20 at 21.  His claim is likely meritless because he cannot demonstrate that Defendants owe him any duty to provide medical care.

17

"[T]he Due Process Clauses generally confer no affirmative right to government aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). The Second Circuit has recognized an exception to that rule where there is a "special relationship" between the individual and the government. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). Involuntary custody is the "linchpin of any special relationship exception." *Id.* at 156. "'[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clauses.'" *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005) (per curiam) (quoting *DeShaney*, 489 U.S. at 200).

The special-relationship exception applies to parolees such as Plaintiff, but not to the extent that it obligates the state to provide parolees with healthcare indefinitely. *See Porath v. City of New York*, No. 22-CV-01302 (JPC) (SLC), 2023 WL 9197680, at *9 (S.D.N.Y. Dec. 21, 2023), *report and recommendation adopted*, 2024 WL 127025 (S.D.N.Y. Jan. 11, 2024); ("[A] parolee, although not in the state's physical custody, is nonetheless in its legal custody, and his or her freedom of movement, while not as restricted as that of an incarcerated prisoner, is nonetheless somewhat curtailed.") (quoting *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005)). Parole imposes only minimal limitations on a person's freedom, and where "the limitations imposed by the state are minimal, so too are the duties it assumes." *Jacobs*, 400 F.3d at 107; *see also Rodriguez v. Rivera*, No. 12-CV-05823 (VB), 2013 WL 5544122, at *7 (S.D.N.Y. Sept. 16, 2013) ("[W]hether and to what extent the State has assumed a duty of care

18

under the special relationship exception turns on whether and to what extent the State has affirmatively acted to restrain an individual's freedom to act on her own behalf").  At most, the state may be required to provide medical services to a parolee for "a period of days or weeks after release . . . until he can obtain his own medical treatment."  *Guarneri v. Wood*, No. 08-CV-00792 (TJM) (DRH), 2011 WL 4592209, at *16 (N.D.N.Y. Sept. 2, 2011), *report and recommendation adopted,* 2011 WL 4594149 (N.D.N.Y. Sept. 30, 2011).

Whether or not Defendants fulfilled any duty owed to Plaintiff with respect to his medical care during his transition out of incarceration is irrelevant for the emergency motions, as Plaintiff has shown no threat of imminent harm from past deprivations of care.  And to the extent any such duty once existed, it no longer applies to Plaintiff's current medical needs several years after his release.  Plaintiff's own allegations clearly show that his medical care is independent of any special relationship with the state and instead resembles the circumstances of any ordinary individual seeking healthcare from private and public sources.  *See e.g.,* Dkt. No. 16 at 2 (alleging that a "CVS pharmacy notified Plaintiff his provider will not renew glaucoma eye drops").  Moreover, "to succeed on a Fourteenth Amendment claim under the special relationship exception, a plaintiff must show that the [defendant's] behavior was so egregious, so outrageous, that it may fairly be said to shock the conscience."  *Davis v. McCleary*, 2017 WL 2266856, at *4 (E.D.N.Y.).  Plaintiff's submissions contain no allegations that meet that standard, and therefore emergency relief is unwarranted even assuming Defendants owe him some relevant duty of care.

Lastly, emergency relief is not supported by Plaintiff's anticipation of housing conditions that will exacerbate his medical problems or his worry that Defendants will engage in "retaliatory administrative actions."  Dkt. No. 13 at 3–4.  He offers no specific, non-conclusory

allegations to demonstrate the likelihood of an irreparable injury resulting from any action by Defendants. "As a general matter, courts should not issue a preliminary injunction merely to prevent some remote or speculative future injury." *Plaza Motors of Brooklyn, Inc. v. Cuomo*, No. 20-CV-04851 (WFK) (SJB), 2021 WL 222121, at *9 (E.D.N.Y. Jan. 22, 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("The injury or threat of injury must be both real and immediate, not conjectural or hypothetical.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motions for emergency relief (Dkt. Nos. 12, 15, 22, and 24) are DENIED. The claims in the Second Amended Complaint against Guinn, Park, French, Carter, Spitzberg, Chawla, the OTDA John Does, New York State of Health, and Health First Health Care are DISMISSED. The Court directs service on Adams, Hochul, and the City of New York and directs the City of New York to assist Plaintiff in identifying the HRA John Doe, in accordance with the instructions provided at *supra* pages 15–16.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 12, 14, 15, 22, and 24.

Dated: March 17, 2026
New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge

20